## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| QUINCEY GERALD KEELER, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No. 08-1168-MLB |
| | ) | |
| ARAMARK, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

This case comes before the court on the following motions:

1. Defendants' motion for summary judgment (Doc. 118) and memorandum in support (Doc. 119)[1], plaintiff's response (Doc. 158) and defendants' reply (Doc. 163);

2. Plaintiff's motion to strike (Doc. 157), defendants' response (Doc. 161), plaintiff's reply (Doc. 165), defendants' supplemental reply (Doc. 167) and plaintiff's supplemental reply (Doc. 172); and

3. Plaintiff's motion for summary judgment (Doc. 166), defendants' response (Doc. 169) and plaintiff's reply (Doc. 171).

## I.    Motion to Strike (Doc. 157)

The court will first turn to the motion to strike plaintiff's deposition because it affects this court's determination of the facts in this case.  Plaintiff asserts that the court must strike his deposition because he did not have the opportunity to review the transcript and make necessary changes.

---

[1] The motion for summary judgment was filed by Aramark and defendant Larry Gengler has joined in the motion.  (Doc. 160).

Plaintiff was deposed on March 31, 2010.  At his deposition he informed the court reporter that he wanted the opportunity to review the transcript.  The court reporter did not immediately issue a transcript because defendants believed they needed to continue the deposition at a later date.  At some point, defendants determined that they did not need to continue the deposition and discovery closed on June 23, 2010.  Defendants filed their motion for summary judgment on June 30, 2010.  In their motion, defendants cited significant portions of plaintiff's deposition and attached the pages cited as exhibits. Plaintiff did not immediately object to defendants' filing.  Instead, plaintiff filed a motion to compel pertaining to other discovery and a motion to extend the filing of his response.  Plaintiff's motions were granted in part and plaintiff was given until March 7, 2011, to file his response.  Plaintiff contemporaneously filed his motion to strike with his response.

In their response, defendants stated that they had no knowledge that plaintiff was never given an opportunity to review his deposition for errors.  Defendants contacted the court reporter who then immediately supplied plaintiff with his deposition and an errata sheet.  Instead of reviewing his deposition, plaintiff refused to sign the certification and errata sheet due to his belief that defendants were at fault for using his deposition in the motion for summary judgment prior to plaintiff's review of the deposition.

Under Rule 30(f), "[e]xcerpts from depositions are not competent summary judgment evidence unless the party offering them attaches a copy of the court reporter's certificate certifying that the copy is true and correct." Zhu v. Countrywide Realty, Co., Inc., 165 F.

Supp.2d 1181, 1194 (D. Kan. 2001).  In this case, defendants did not submit the certificate when they attached the deposition.  However, plaintiff was given an opportunity to correct his deposition and he refused to do so for invalid reasons.  Moreover, plaintiff also has not made any specific objection to portions of his deposition. Therefore, the court will not strike the deposition for failure to comply with Rule 30(e).[2]

## II.   Facts[3]

Plaintiff was hired by Aramark in January 2006 as a food service worker.  Plaintiff's position is located in the cafeteria at Wesley Hospital in Wichita, Kansas.  Upon his hiring, plaintiff was given a copy of Aramark's employee handbook.  As a food service worker, plaintiff's duties include cashiering, food preparation, filling machines, setting up food areas, stocking condiments, serving customers, carving meat and cleaning tables.  On September 6, 2007, plaintiff brought a doctor's note stating he had been hospitalized from August 28, 2007, to September 5, 2007, for a posterior neck

---

[2] In any event, the court would not allow plaintiff to make substantive changes to his deposition.  See Rios v. Welch, 856 F. Supp. 1499, 1502 (D. Kan. 1994)("It is the court's belief that a plaintiff is not permitted to virtually rewrite portions of a deposition, particularly after the defendant has filed a summary judgment motion, simply by invoking the benefits of Rule 30(e). As the court stated in its previous order, a deposition is not a 'take home examination' and an 'errata sheet' will not eradicate the import of previous testimony taken under oath.")

[3] The following facts are either uncontroverted or, if controverted, taken in the light most favorable, along with all favorable inferences, to plaintiff.  See Hall v. United Parcel Serv., No. Civ. A. 992467-CM, 2000 WL 1114841, at *5 (D. Kan. July 31, 2000) (citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998)).  To the extent relevant, the factual disagreements between the parties will be noted.

abscess.  Plaintiff also produced an additional doctor's note which stated that he was unable to work until September 15.  Aramark informed plaintiff that he qualified for FMLA leave for his absence. On September 14, plaintiff delivered another doctor's note to Aramark which stated that plaintiff needed to be relieved from work until October 1 because of a draining wound.  On September 27, plaintiff's doctor wrote an additional note which stated that plaintiff had a Methicillin-resistant Staphylococcus Aureus infection (MRSA) and could not work until October 31.  The note additionally stated that Aramark was to contact the doctor if it approved of plaintiff working while he had MRSA, a highly contagious infection.  Aramark did not allow plaintiff to return to work until the doctor examined plaintiff's wound and determined it to be free of infection.  This is because Wesley Hospital is required to follow the CDC Health Guidelines which instruct that employees diagnosed with an MRSA infection with a draining lesion are to be restricted from contact with patients and food handling until the lesion has been resolved.

On October 25, plaintiff delivered another doctor's note which stated that plaintiff needed to be relieved of work until November 1. On November 1, plaintiff again delivered a doctor's note to Aramark which stated that plaintiff could not return to work until November 2.  Plaintiff did return to work on November 2 as a food service worker.  Plaintiff continued to work in the cafeteria and had similar duties.  The work logs maintained by Aramark show that plaintiff worked as a cashier for 165 days in 2006, 169 days in 2007 and 175 days in 2008.

Aramark initially scheduled plaintiff to work on November 1

based on the October 25 doctor's note.  When plaintiff did not report for work, Aramark marked an unexcused absence on plaintiff's record. Aramark corrected this absence at a later date.  All other alleged unexcused absences which were noted during plaintiff's medical leave have been removed from plaintiff's record.

Plaintiff filed a complaint against Aramark and various other defendants in June 2008.  The court dismissed plaintiff's claims against all defendants except Aramark and Larry Gengler, plaintiff's supervisor, and, in addition, dismissed several of plaintiff's remaining claims against Aramark and Gengler.  (Docs. 75, 86). Aramark and Gengler now move for summary judgment on plaintiff's remaining claims.

## III.  Plaintiff's Pro Se Status

The court is mindful that plaintiff is proceeding pro se.  It has long been the rule that pro se pleadings, including complaints and pleadings connected with summary judgment, must be liberally construed.  See Hall v. Bellmon, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991); Hill v. Corrections Corp. of America, 14 F. Supp.2d 1235, 1237 (D. Kan. 1998).  This rule requires the court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction.  See Hall, 935 F.2d at 1110.  Liberal construction does not, however, require this court to assume the role of advocate for the pro se litigant.  See id.  Plaintiff is expected to construct his own arguments or theories and adhere to the same rules of procedure that govern any other litigant in this district. See id.; Hill, 14 F. Supp.2d at 1237.  A pro se litigant is still expected to follow fundamental procedural rules.  Ogden v. San Juan

County, 32 F.3d 452, 455 (10th Cir. 1994).

**III.  Summary Judgment Standards**

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here.  Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper disposition of the claim.  Adamson v. Multi Community Diversified Svcs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008).  When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  If so, the court cannot grant summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**IV.  Analysis**

**A.  FMLA Claims**

Plaintiff brings claims for FMLA interference/entitlement and discrimination/retaliation pursuant to 29 U.S.C. § 2615(a)(1) and (a)(2), respectively.  The FMLA affords a qualified employee twelve weeks of unpaid leave each year for serious health problems that prevent the employee from performing his job.   29 U.S.C. §

-6-

2612(a)(1)(D).  The FMLA requires an employer to reinstate an employee to his former position or its equivalent upon the employee's timely return from FMLA leave.  29 U.S.C. § 2614(a).

An employee may recover damages against the employer when it has interfered with the right to medical leave or reinstatement following medical leave.  29 U.S.C. § 2615; Smith v. Diffee Ford-Lincoln -Mercury, Inc., 298 F.3d 955, 960 (10th Cir. 2002).

> To make out a prima facie claim for FMLA interference, a plaintiff must establish (1) that he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights.

Jones, 427 F.3d at 1319.

> To state a prima facie case of retaliation, [a plaintiff] must show that: (1) she engaged in a protected activity; (2) [the defendant] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action.

Metzler v. Federal Home Loan Bank of Topeka, 464 F.3d 1164, 1171 (10th Cir. 2006).  If a plaintiff establishes interference with his FMLA rights, then the employer bears the burden of proof on the third element.  Id. at 1172.

Plaintiff has alleged a total of 11 claims under the FMLA.  Both defendants and plaintiff have moved for summary judgment on all claims.

**1.   Claims 1, 2, 3, 4, 6, 8, 11**

In these claims, plaintiff alleges that Aramark has violated the FMLA by counting his absences on the days plaintiff was in the hospital and on medical leave as "no fault" absences instead of leave

under the FMLA.[4]  Aramark asserts that these claims must be dismissed because Aramark has removed all of the erroneous notations from plaintiff's record.  Plaintiff responds that he is seeking relief in the form of an injunction prohibiting defendants from future incorrect attendance notations.  Plaintiff cites to an exhibit in support of his position that Aramark continues to improperly document his absences, but plaintiff fails to demonstrate exactly where in the lengthy exhibit the error occurred.  (Doc. 158 at 26).

The FMLA permits recovery for "wages, salary, employment benefits, or other compensation denied or lost," and "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion."  29 U.S.C. § 2617(a)(1)(A)(i)(I), (a)(1)(B).  The FMLA clearly allows plaintiff to seek damages other than actual economic damages.  See Roseboro v. Billington, 606 F. Supp.2d 104, 113 (D. D. C. 2009)(the plaintiff had a valid claim for equitable relief when the defendant improperly documented his absences as "absent without leave" and the court ordered the defendant to expunge the plaintiff's employment record of the wrongful charge.)

The problem with plaintiff's position is that "§ 2617 provides no relief unless the employee has been prejudiced by the violation." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89, 122 S. Ct. 1155, 1161 (2002).  And then, the remedy is tailored to the harm suffered.  Id.  Based on plaintiff's own admissions, he has not suffered any prejudice.  Plaintiff's record is void of any unexcused

---

[4] The record is somewhat confusing, but it appears that the medical leave days were noted in his record as unexcused absences on June 5 and September 22, 2008.  (Doc. 158, exh. D at 11-12).  These notations have been corrected in plaintiff's employment record.

absences and plaintiff has failed to provide evidence of any other prejudice.  Moreover, plaintiff has provided no evidence that future harms will occur.  In the absence of compelling evidence of a future violation, the court cannot grant plaintiff injunctive relief.

Therefore, defendants' motion for summary judgment on claims 1, 2, 3, 4, 6, 8, 11 is granted and plaintiff's motion is denied.

**2.   Claim 5**

In claim 5, plaintiff contends that he was not paid on September 3, 2007, Labor Day, in violation of the FMLA.  Aramark's Human Resources Director Jeanne Doege submitted an affidavit which states that Aramark does not offer Holiday pay to any employee who is on FMLA leave or non-FMLA leave. (Doc. 130, exh. 9).  Plaintiff contends that Aramark's written policy offers paid holiday leave to all employees and cites to the policy in the handbook.  (Doc. 158, exh. E). Aramark's policy states that "In order to be eligible for holiday pay, you must work the last regularly scheduled workday (full shift) before the holiday and the first regularly scheduled workday (full shift) following the holiday, **unless the absence is previously approved by your Manager.**" (Doc. 158, exh. E at 4)(emphasis supplied).

Contrary to plaintiff's assertions, he has not controverted Aramark's statement of fact concerning holiday pay.  The policy cited by plaintiff does not discuss holiday pay for those employees who have taken leave.  The policy states that all full time employees will be paid if they work the last workday prior to the holiday and the first workday after.  Plaintiff did not work those days due to his medical leave.  Additionally, the policy states that an employee would be eligible for pay if he was absent prior to or after a holiday but only

if the absence has been previously approved.  In this case, plaintiff has presented no evidence that his absence was approved by a Manager <u>prior</u> to the Labor Day holiday.  The uncontested facts show that plaintiff submitted his doctor's note, which excused his absences the last week of August and the first week of September, on September 6. Therefore, plaintiff did not meet the condition of the policy and would not receive holiday pay regardless of Aramark's position concerning holiday pay for employees who are on leave.

Defendants' motion for summary judgment on claim five is granted and plaintiff's motion is denied.

### 3.   Claim 7

In plaintiff's seventh claim, he alleges that he lost pay during September and October because Aramark refused to allow him to return to work even though he had been released by his doctor on September 15 to return to work as a cashier.  Apparently, plaintiff is relying on the initial doctor's note of September 6 which stated plaintiff could return to work on September 15. (Doc. 130, exh. 11).   On September 14, however, plaintiff presented a doctor's note which said that he could not work until "at least Oct 1" due to a draining wound. (Doc. 130, exh. 12).   On September 27, plaintiff's doctor wrote an additional note stating that plaintiff had an MRSA and could not work until October 31.  The note also states "Please notify me if pt can return to work with the wound."  (Doc. 130, exh. 10).

Plaintiff asserts that defendants violated his rights by refusing to allow him to return to work on September 15 as a cashier even though plaintiff admittedly had a highly contagious infection. Plaintiff contends that Aramark's requirement of keeping them updated

-10-

on his medical condition somehow violated his rights under the FMLA. Aramark had a legal right to request continuous updates concerning plaintiff's medical condition and to require plaintiff to have a medical release prior to working. <u>Buettner v. N. Okla. County Mental Health Ctr.</u>, 2005 WL 3164698, *4 (10th Cir. Nov. 29, 2005)(citing 29 CFR § 825.311).   The statements submitted by plaintiff's doctor clearly did not release plaintiff to work on September 15.   The doctor's note submitted on September 27 suggests that Aramark could contact the doctor if it was possible for plaintiff to work with MRSA. The note, however, is not a release to work.

Moreover, Aramark, operating inside a hospital, is justified in stating that an employee with a contagious infection cannot be permitted to work.   Those actions are not "actions that a **reasonable** employee would have found materially adverse." <u>Metzler v. Federal Home Loan Bank of Topeka</u>, 464 F.3d 1164, 1171 (10th Cir. 2006)(emphasis supplied).   Therefore, plaintiff has failed to establish a prima facie claim of retaliation under the FMLA.   Defendants' motion for summary judgment on claim seven is granted and plaintiff's motion is denied.

### 4.   Claims 9 and 10

In these two claims, plaintiff asserts that Aramark violated the FMLA by failing to reinstate him to his position of cashier.   The FMLA requires employers to restore an employee returning from FMLA leave to either the same position or "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A)-(B). The regulation defining an equivalent position focuses on the factors of equivalent pay, equivalent benefits, and equivalent terms and conditions of

-11-

employment. 29 C.F.R. § 825.215 (2000).  An equivalent position must have substantially similar duties, conditions, responsibilities, privileges and status as the employee's original position.  Id. at § 825.215(e).

Plaintiff's position prior to FMLA leave and after returning from leave was "food service worker."  Plaintiff's position has never been that of a "cashier."  Aramark does not have a job position entitled "cashier."  The only evidence plaintiff points to in support that there is such a position is a task checklist which is used daily at Wesley Hospital. (Doc. 158, exh. G).  This checklist does not support plaintiff's contention that there is a separate position of "cashier."  Moreover, the undisputed facts show that plaintiff has the same duties after his leave that he held prior to his leave.  Therefore, plaintiff is unable to show that Aramark has violated the FMLA for failing to reinstate plaintiff to his prior position.

Defendants' motion for summary judgment on claims nine and ten is granted and plaintiff's motion is denied.

**B.   Negligence Claims**

In claims fifteen, sixteen and seventeen, plaintiff states that Aramark has negligently supervised, retained and trained its management staff.  Aramark asserts that these claims should be dismissed because they are duplicative of the FMLA claims, citing Day v. Excel Corp., No. 94-1439, 1996 WL 294341, *14 (D. Kan. May 17, 1996).  Day held "a claim for negligent supervision is precluded where there are adequate statutory remedies under state or federal law."  Id. (citing Schweitzer-Reschke v. Avnet, Inc., 874 F. Supp. 1187 (D. Kan. 1995).

Plaintiff's claims appear to be based on his allegations set forth in his FMLA claims.  Plaintiff asserts that Aramark employees failed to investigate his complaints, improperly documents his FMLA absences as unexcused absences and harassed him by instigating an investigation.  These internally inconsistent allegations are somewhat different from his FMLA claims.  He also requests relief for his mental stress and the continued retaliation by Aramark employees. Relief for emotional damages is not available under the FMLA.

Moreover, the FMLA clearly provides that "Nothing in this Act or any amendment made by this Act shall be construed to supersede any provision of any State or local law that provides greater family or medical leave rights than the rights established under this Act or any amendment made by this Act."  29 U.S.C. § 2651(b).  The language in the statute supports a finding that plaintiff may pursue a state remedy if it provides that plaintiff with greater rights.  See Aldridge v. Indian Elec. Co-op., No. 07-633, No. 2008 WL 1777480, *4 (N.D. Okla. April 17, 2008).

Defendants also move for summary judgment on these claims on the merits.

### 1.   Negligent Supervision and Retention

Plaintiff has alleged claims of negligent supervision and retention against Aramark due to an alleged denial of his FMLA rights and the improper notations in his record.  To establish negligent supervision under Kansas law, plaintiff must show that "the employer had reason to believe that an undue risk of harm to others would exist as a result of the employment of the alleged tortfeasor" and "such harm is within the risk."  Estate of Sisk v. Manzanares, 262 F.

Supp.2d 1162, 1187 (D. Kan. 2002).  Plaintiff has failed to show that Aramark had any reason to believe that a risk of harm to others would result from the employment of Joe Neubaur, CEO of Aramark, or Jeanne Doege.   Moreover, plaintiff has failed to show that Aramark's employees' conduct resulted in any harm to plaintiff because, as previously discussed, plaintiff's record has been corrected.

In order to establish a claim of negligent retention, plaintiff must show that Aramark has retained an employee that it knows or should have known is incompetent.  Beam v. Concord Hosp., Inc., 873 F. Supp.c 491, 503 (D. Kan. 1994).  Plaintiff must also establish that Aramark "had reason to believe that an undue risk of harm to others would exist as a result of the employment of the alleged tortfeasor." Estate of Sisk v. Manzanares, 262 F. Supp.2d 1162, 1187 (D.Kan. 2002).  Plaintiff has not met his burden.  Therefore, defendant's motion for summary judgment on these claims is granted and plaintiff's motion is denied.

### 2.   Negligent Training

Plaintiff has also alleged that Aramark was negligent in training its staff on handling FMLA requests.  In order to state a claim of negligent training, however, plaintiff must establish that Aramark had a reason to believe that its employees were not properly trained. Thomas v. County Comm'rs of Shawnee County, 40 Kan. App.2d 946, 961, 198 P.3d 182 (2008).  Plaintiff has failed to establish that Aramark had reason to believe that its employees were not properly trained and therefore his claim of negligent training cannot survive summary judgment.  Aramark's motion for summary judgment on this claim is granted and plaintiff's motion is denied.

**V.   Conclusion**

Defendants' motion for summary judgment is granted (Doc. 118) and plaintiff's motion for summary judgment is denied (Doc. 166).   The clerk is directed to enter judgment in favor of Aramark and Gengler and against plaintiff.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged.   The standards governing motions to reconsider are well established.   <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992).   Any such motion shall not exceed three double-spaced pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>.   If the motion does not comply with those standards it will be stricken.   The response to any motion for reconsideration shall not exceed three pages.   No reply shall be filed.


IT IS SO ORDERED.

Dated this <u>  11th  </u> day of August 2011, at Wichita, Kansas.


<u>s/ Monti Belot                  </u>
Monti L. Belot
UNITED STATES DISTRICT JUDGE